IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-22-2235 |
| | § | |
| GLOW HOOKAH LOUNGE, INC., *et al.*, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Joe Hand Promotions, Inc. sued Glow Hookah Lounge, Inc., Shariq Ashraf Khan, Shamim Ahmed Khan, Muhammad Adnan, and Qaiser Latif under the Federal Communications Act. Joe Hand Promotions alleged that the defendants had illegally intercepted and exhibited a broadcast of a wrestling match without paying or obtaining authority from Joe Hand Promotions, which held the license. Mr. Ashraf Khan failed to answer the complaint or otherwise appear, making entry of default proper. Default was entered against Mr. Ashraf Khan on January 6, 2023. (Docket Entry No. 36). All other defendants were voluntarily dismissed.

Joe Hand Promotions has filed a motion for default judgment against Mr. Ashraf Khan, individually and as officer, director, shareholder, or principal of the entity owning and operating Glow Hookah Lounge. Joe Hand Promotions has filed affidavits and exhibits in support of its claims for damages and reasonable attorney fees. Notice to the defendant and further hearings are not necessary. Fed. R. Civ. P. 55(b)(2).

Joe Hand Promotions' submissions establish unauthorized interception and exhibition of a boxing match broadcast, in violation of the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. Joe Hand Promotions owns the right to exhibit and sublicense the right to

exhibit the broadcast of the July 20, 2019, boxing match between Manny Pacquiao vs. Keith Thurman, and all undercard bouts and commentary. Only establishments that Joe Hand Promotions contractually authorized could lawfully broadcast the match. Neither Glow Hookah Lounge nor any representative contracted to obtain the rights to broadcast the boxing match or paid the commercial sublicense fee to do so. The Lounge intercepted (or assisted in intercepting) the broadcast boxing match and displayed it to patrons without paying licensing fees. Mr. Ashraf Khan is a director of Glow Hookah Lounge, Inc., which owns and operates the Lounge. (Docket Entry No. 38-2 at 6).

Based on the pleading, motions, briefs, the evidence presented, and the applicable law, the motion for default judgment, (Docket Entry No. 38), is granted. Judgment is entered in the amount of $23,156.00 against Mr. Ashraf Khan. An order of final judgment is separately entered.

The reasons are explained below.

**I.      The Legal Standard**

If damages can be calculated with certainty, Rule 55(b) provides for judgment "against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). "The Fifth Circuit has held that a 'party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.'" *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting reference omitted). A "default judgment must be 'supported by well-pleaded allegations' and must have 'a sufficient basis in the pleadings.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting reference omitted).

When, as here, the pleadings are sufficient, the court must determine whether the record supports the damages requested. The plaintiff's submission of "the amount of damages and

attorney's fees he feels he should be awarded" is insufficient to compute the damages amount without "support in the record and [a] method of determining the accuracy of those totals. Mere statements of award values without any indication of how those amounts were reached cannot rise to the level of an amount liquidated or capable of mathematical calculation." *Richardson v. Salvation Army*, 161 F.3d 7, 7 (5th Cir. 1998). "The court may rely on detailed affidavits or documentary evidence, supplemented by the judge's personal knowledge, to evaluate the proposed sum." *Id.*

Section 605 of the Communications Act governs the "unauthorized publication or use of communications." 47 U.S.C. § 605. Section 605 states in relevant part as follows:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605.

A party violates section 605 by displaying an intercepted communication. Under section 605(e)(3), the "party aggrieved" may elect to recover either the actual damages sustained or statutory damages for each violation, in a sum of not less than $1,000.00 or more than $10,000.00. If the court finds that the violation was committed "willfully" or for the purpose of direct or indirect commercial advantage or private financial gain, the court may increase damages by an amount of not less than $10,000.00 and not more than $100,000.00.

II.   **Analysis**

The record establishes that the Glow Hookah Lounge displayed the boxing match, without authorization, for commercial gain, establishing liability under section 605. Mr. Ashraf Khan is a director of Glow Hookah Lounge, Inc. Section 605(e)(3)(C)(I)(II) gives the court discretion to determine statutory damages between $1,000.00 and $10,000.00 for each violation.

Several factors present in this case favor granting the maximum statutory damages of $10,000.00, as requested. The record includes a copy of the license agreement granting Joe Hand Promotions an exclusive license to six events, including the July 20, 2019 match between Pacquiao and Thurman. (Docket Entry No. 38-4). The record, including a declaration for a witness who was present during the broadcast, proves the broadcast. The record also shows that the broadcast was done intentionally and could not have been an accident or mistake. (Docket Entry Nos. 36 and 38). These factors, the difficulty in detecting unlawful interception, the widespread problem of piracy, the projected loss to Joe Hand Promotions, and the need for an award sufficient to deter future piracy, weigh in favor of granting the maximum statutory damages. Joe Hand Promotions has shown the basis for an award of $10,000.00 in damages under section 605(e)(3)(C)(i)(II).

Joe Hand Promotions also seeks an award of additional, punitive damages. Section 605 states that in any case in which the court finds that the violation was committed willfully and for the purpose of direct or indirect commercial advantage or private financial gain, the court may increase the damages award by no more than $100,000.00. 47 U.S.C. § 605(e)(3)(C)(ii). The record shows that approximately 15 people were present for the broadcast. (Docket Entry No. 38-6). If it was intended to increase the number of Lounge patrons, it did not succeed. The Lounge advertised the broadcast in advance, on social media, (Docket Entry No. 38-8), and had previously advertised the unauthorized broadcast of other matches, (Docket Entry Nos. 38-9 and 38-10).

Some of these posts were made by a "Shan Khan" on Facebook. (*Id.*) The record supports an additional damages award of $10,000 for a willful violation.

As the prevailing party, Joe Hand Promotions is entitled to an award of its costs, including reasonable attorney's fees. 47 U.S.C. § 605(e)(3)(B)(iii). "In determining the appropriate amount of attorney's fees, a district court first must calculate the 'lodestar' by 'multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers.'" *Rodney v. Elliott Sec. Sols., L.L.C.*, 853 F. App'x 922, 924 (5th Cir. 2021) (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)). Whether an hourly rate is reasonably depends on whether that rate is consistent with the "hourly rate in the community for the work at issue." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). In a sworn affidavit, counsel for Joe Hand Promotions asserts that he worked 10.6 hours at an hourly rate of $250.00. The court finds that this rate is reasonable. The total fees awarded to counsel for Joe Hand is $2,650.00. Finally, Joe Hand Promotions requests $506.00 in costs, including $402.00 in filing fees, $99.00 in process-related costs, and $5.00 in copy fees. The court finds these costs reasonable.

Given this record, the court concludes that the Joe Hand Promotions has established its entitlement to default judgment against Mr. Ashraf Khan in the amount of $10,000.00 in statutory damages; $10,000.00 in enhanced damages; reasonable attorney's fees and costs in the amount of $3,156.00, and postjudgment interest on all of the above at the rate of 5.34% per annum. Final judgment will be entered by separate order.

SIGNED on August 21, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

5